UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NING YU,

                       Plaintiff,

      -against-

STATE STREET CORPORATION, ET AL.,

                      Defendants.

08 MDL No. 1945
08 Civ. 8235 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

In an opinion dated February 25, 2010, the Court held that plaintiff's Complaint did not state a claim under the Securities Act of 1933 because it did not adequately plead the existence of materially false or misleading statements in the Fund's offering documents.[1] *Yu v. State Street Corp.*, 2010 WL 668645 (S.D.N.Y. Feb. 25, 2010) ("*Op.*"). Further, the Court dismissed the Complaint with prejudice and issued judgment in defendants' favor, thereby denying plaintiff the opportunity to re-plead. *Id.* at *10. Plaintiff now moves for reconsideration of the latter aspect of the Court's decision. With his papers he has submitted a proposed second amended complaint ("PSAC"), which he argues cures the Complaint's deficiencies.

There are two issues. First, should the Court reconsider its decision to dismiss the Complaint with prejudice? And second, if the answer to that question is yes, would granting plaintiff an opportunity to amend the Complaint be futile? *See Panther Partners Inc. v. Ikanos Commc'n, Inc.*, 347 Fed. App'x 617, 620-21 (2d Cir. 2009). The first issue

---

[1] Familiarity with the February 25, 2010 opinion (the "Opinion") is presumed. All terms defined in the Opinion retain the same meaning here.

requires little discussion.  The Court dismissed the Complaint with prejudice principally because plaintiff had not requested leave to re-plead.  *Op.* at *10.  As plaintiff has now submitted a detailed motion requesting leave and a proposed amended pleading, the Court does not believe it would serve the interests of justice to summarily reject that motion simply because plaintiff did not request leave in his opposition to the motions to dismiss.  *See* Fed. R. Civ. P. 15(a) ("The Court shall freely give leave [to amend] when justice so requires."); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("[I]n view of the provision in rule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate [a] previously entered judgment.") (citation omitted).  Further, prior to filing his complaint, plaintiff received only a summary notice of the grounds for the proposed motions to dismiss in a letter concerning a discovery stay, rather than the more detailed letter typically received pursuant to the Court's individual rules of practice.  Finally, plaintiff correctly notes that *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which impacted federal pleading standards and upon which the Court relied in the Opinion, was not issued until well after he filed the Complaint.  *See Panther Partners Inc.*, 347 Fed. App'x at 622.  For all these reasons, plaintiff's motion for reconsideration of the "with prejudice" dismissal is granted and the judgment against defendants is vacated.  *See Nat'l Petrochemical Co. of Iran*, 930 F.2d at 245.  The relevant question thus becomes whether amendment would be futile.  *See id.* at 621; *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility . . . .").

"Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed amended complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Segatt v. GSI Holding Corp.*, 2008 WL 4865033, at *3 (S.D.N.Y. Nov. 3, 2008) ("[I]f 'the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.'") (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)).

The Court is satisfied that the PSAC adequately pleads the existence of at least some materially false or misleading statements in the Fund's offering documents. Most of the proposed amendments relate to plaintiff's claim that percentage tables in the Fund's Annual Reports and other public documents misrepresented the extent of the Fund's investments in mortgage-backed and mortgage-related securities.[2] In the Complaint, plaintiff alleged that some mortgage-related securities were categorized as asset-backed and international debt securities, rather than as mortgage-backed securities. As a result, though the 2006 table (to take one example) indicated that mortgage-backed securities accounted for 11.3% of the portfolio, mortgage-related securities as a whole represented a larger percentage of the portfolio. This alleged fact led plaintiff to conclude that the tables contained "untrue statements of material fact and materially

---

[2] The terms "mortgage-backed" and "mortgage-related" are defined in the Opinion. *Op.* at *2 n.2 ("In this opinion, the Court uses 'mortgage-related securities' as a general term meaning any security that is secured by mortgage loans. 'Mortgage-backed securities,' on the other hand, refers to the specific subset of mortgage-related securities that the prospectuses carve out as a distinct category: securities secured by 'first mortgages or first deeds of trust or other similar security instruments creating a first lein.' Thus, all mortgage-backed securities are mortgage-related securities but not all mortgage-related securities are mortgage-backed securities.").

3

misleading [statements] because they misrepresented the Fund's true exposure to risky mortgage-related securities." (Compl. ¶ 68.)

The Court rejected this claim for various reasons. First, the allegations did not suggest that the percentage tables were actually false. The prospectuses specifically defined the term "Mortgage-Backed Securities" to include only securities collateralized "by first mortgages or first deeds of trust or other similar security instruments creating a first lien . . . ." (Prospectus at 48.) Thus, the tables were not false simply because they counted other mortgage-related securities, which did not fall within that definition, in other categories. Rather, the reported percentages could only be false if defendants counted securities that fit the mortgage-backed definition in other categories. Plaintiff made no allegations to this effect. *Op*. at \*7.

Plaintiff's real claim seemed to be one of omission: because defendants disclosed that a certain type of mortgage-related security represented a relatively small percentage of the portfolio—11.3% in 2006, 13.8% in 2007—it was misleading not to disclose that mortgage-related securities *as a whole* represented a larger percentage of the portfolio. The Court rejected this theory as well, however, because plaintiff failed to adequately allege that the supposed misrepresentation was material. First of all, the Complaint did not describe the magnitude of the omission: there was no information about the percentage of the portfolio that mortgage-related securities as a whole actually represented. Secondly, it was apparent from the face of the Annual Reports that some mortgage-related securities were classified in the other two categories and not in the mortgage-backed category exclusively. Therefore, no reasonable investor could have been misled into believing that the mortgage-backed category accounted for every

4

mortgage-related security in the portfolio. *Op*. at *8. Finally, the Court noted that plaintiff had not pleaded any facts to show that the purported misrepresentation would have impacted a reasonable investor's decision-making at the time. *Id*. at *7. Most of the "miscategorized" mortgage-related securities appeared in the asset-backed category, which included instruments backed by credit-card debt and auto loans. (Prospectus at 43.) Nothing in the Complaint indicated that describing non-first lien mortgage-related securities as "Mortgage-Backed" rather than "Asset-Backed" securities would have altered a reasonable investor's decision to purchase shares in the Fund. *Op*. at *7 ("The Court cannot discern whether the table had the effect of cloaking particularly risky mortgage securities within a category of safer bets, or whether the asset-backed securities . . . were on the whole riskier than the mortgage-related securities in their midst. To plead materiality, at least some information about the 'miscategorized' securities is needed to plausibly show that the table distorted the Fund's risk profile or that its inaccuracy would have otherwise been significant to a reasonable investor deciding how to act."). In sum, the Complaint did not contain sufficient facts to plausibly plead that defendants' omission of the percentage of all mortgage-related securities in the portfolio rendered the stated percentage of mortgage-backed securities materially misleading. *Op*. at *7-8.

      The proposed amendments appear to cure these pleading deficiencies. First, plaintiff now alleges that the stated percentage of mortgage-backed securities was actually false, because many securities that fit the prospectuses' definition of the term were in fact counted in other categories. (PSAC ¶¶ 110-18.) The PSAC alleges that mortgage-backed securities represented at least 34%, and perhaps as much as 86%, of the

5

portfolio in 2007, not 13.8% as stated in the Annual Report. (*Id.*) Of course, falsity alone does not establish a claim; plaintiff must also plead materiality. *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) ("*JP Morgan Chase*"). And questions of proof remain about the materiality of the alleged mis-categorization. Without the benefit of hindsight—*i.e.*, the knowledge that mortgage-backed securities (instead of securities backed by credit card debt, for example) would eventually plummet in value and precipitate the Fund's liquidation—the conclusion that correct figures showing more mortgage-backed and fewer asset-backed securities would have affected a reasonable investor's decision to purchase shares is far from obvious. Further, the Annual Reports listed every security in the portfolio, so regardless of the inaccuracy in the percentage table, plaintiff could ascertain the exact composition of the Fund's holdings. But these arguments are better made at the summary judgment stage. The standard for pleading materiality is low. *JP Morgan Chase*, 553 F.3d at 197 ("[A] complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."). Here, the well-pleaded allegations are that defendants understated the mortgage-backed statistic—a statistic they found significant enough to include in the Annual Reports—by more than 100%. That misstatement is not "so obviously unimportant" as to warrant dismissal of claims premised thereon. *Id*. Secondly, plaintiff now alleges that mortgage-related securities as a whole represented 87% of the Fund's portfolio at a time when the Annual Report stated that mortgage-backed securities represented only 13.8% of the Fund.[3] (PSAC ¶ 71 (also alleging

---

[3] Citing an internal State Street document, the PSAC actually avers that mortgage-*backed* securities made

similar discrepancies at different dates).)  In light of this addition, the PSAC states a plausible claim that the Annual Report materially misled investors by disclosing that a specific type of mortgage-related security represented only a small portion of the portfolio, while at the same time failing to disclose that the Fund invested nearly all of its assets in mortgage-related securities of some sort.  *See In re Morgan Stanley Information Fund*, 592 F.3d 347, 360 (2d Cir. 2010) (Securities Act creates liability for "omission of information that is necessary to prevent existing disclosures from being misleading").  It remains true that any reasonable investor should have known that *some* mortgage-related securities were counted in other categories.  *See op.* at *8.  But as plaintiff persuasively argues, "there is a world of difference between a Fund listing 14% [Mortgage-Backed securities] with 'some' additional mortgage securities categorized as [Asset-Backed securities], and a fund consisting of nearly 90% [mortgage-related securities]."  (Pl. Reply at 8.)   If the allegations are true, the Fund may have amounted to an undiversified investment in the mortgage sector, and the narrow disclosure of the percentage of "mortgage-backed" investments arguably misled investors about that fact.  Thus, the PSAC states a plausible claim that the percentage tables mis-categorized securities and were materially misleading.  *See In re Morgan Stanley Information Fund*, 592 F.3d at 360.

*     *     *

---

up roughly 87% of the portfolio in 2007.  (PSAC ¶ 71.)  Defendants argue that the internal document uses the term "mortgage-backed security" differently than the prospectuses, and that not all of the securities classified as "mortgage-backed" in the internal document necessarily fell within the narrow definition set forth in the prospectuses.  (Def. Mem. at 13 n.5.)  This argument probably overreaches, particularly in motion to dismiss context, but because the Court finds that the PSAC states a claim even if the figures listed in ¶ 71 represent mortgage-related, rather than mortgage-backed, securities, it is unnecessary to resolve this issue now.

Some issues concerning the sufficiency of plaintiff's allegations remain unresolved. Defendants have argued that the complaint contains other inadequacies that the Court has yet to address, such as facially apparent negative causation and faulty Section 12 and Section 15 claims. Further, the proposed amendments may raise additional issues—the PSAC includes, for example, new allegations that the terms "Diversified Portfolio" and "Liquidity" in the Fund's description were false and misleading. (*Compare* PSAC ¶¶ 119-28 *with* Compl. ¶¶ 58-62.) Rather than resolve these issues in piecemeal fashion, the Court invites defendants to state all of their challenges to the PSAC in a second motion to dismiss, to be filed within thirty days. Briefing that has already been submitted need not be re-filed; to the extent defendants wish to renew any arguments that they do not believe are affected by the new allegations, they should simply indicate as much. The motions should not re-argue issues that have already been decided, *e.g.*, the sufficiency of the PSAC's allegations concerning the percentage tables.[4]

---

[4] The February 25, 2010 Opinion also dismissed plaintiff's misvaluation claims and claims that the "high-quality" description was materially false and misleading. With regard to the misvaluation claims, the PSAC does not contain amendments that address the shortcomings identified in the Opinion. *See op.* at *8-9 ("To survive a motion to dismiss, plaintiff[] must allege some facts to close the loop between the market turmoil and the accuracy of the Fund's valuations."). The Court therefore holds that the PSAC does not state plausible misvaluation claims, and the motions should not address this issue. With regard to the "high-quality" claims, the Court expresses no opinion as to whether the PSAC cures the deficiencies in those claims, due to the scant attention this issue received in the parties' reconsideration briefs. The parties may therefore address this issue in their motion papers.

## CONCLUSION

For the reasons stated, plaintiff's motion for reconsideration and leave to amend [59] is granted. The judgment for defendants [58] is vacated. Plaintiff shall file a Second Amended Complaint within 14 days of this order. Defendants shall file any 12(b)(6) motions challenging the Second Amended Complaint within 30 days. The Clerk is directed to re-open this case.

SO ORDERED.

Dated: New York, New York
July 14, 2010

Richard J. Holwell
United States District Judge