UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | : : : : | MDL No. 1945 |
| NING YU, On Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No. 1:08-cv-08235-PAC (Relates to MDL No. 1945) |
| Plaintiff, | : : | CLASS ACTION |
| vs. | : : | |
| STATE STREET CORPORATION, et al., | : : | |
| Defendants. | : : | |

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS

748710_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   HISTORY OF THE LITIGATION .............................................................................2

III.  THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS
      REQUIREMENTS.........................................................................................................4

IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT..........7

      A.    The Settlement Before the Court ............................................................................7

      B.    The Standards for Judicial Approval of Class Action Settlements.........................7

      C.    The Settlement Satisfies the *Grinnell* Criteria for Approval ..................................9

            1.    The Reasonableness of the Settlement in Light of the Best Possible
                  Recovery ........................................................................................................9

            2.    The Risks of Continued Litigation...............................................................11

            3.    The Complexity, Expense, and Likely Duration of the Litigation ...........12

            4.    Stage of Proceedings and Extent of Discovery..........................................13

            5.    Maintaining the Class Action Throughout Trial .......................................14

            6.    The Reaction of the Class to the Settlement ...............................................15

V.    THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND
      REASONABLE AND SHOULD ALSO BE APPROVED.............................................16

VI.   CONCLUSION.............................................................................................................18

748710_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679
    (S.D.N.Y. Aug. 6, 2010) .......................................................................................6, 14

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...................................................................................8, 15

*DeJulius v. New Eng. Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ...................................................................................4

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................8, 9, 15

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
    (S.D.N.Y. Oct. 24, 2005) .....................................................................................10, 12

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................14

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
    (S.D.N.Y. Apr. 6, 2006)..............................................................................13, 14, 15

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007
    (S.D.N.Y. May 13, 2011)........................................................................................17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918
    (S.D.N.Y. July 27, 2007) .........................................................................................8, 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
    (S.D.N.Y. Nov. 8, 2010) .......................................................................................10, 16

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................7, 16

*In re IMAX Sec. Litig.*,
    No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 86513
    (S.D.N.Y. June 20, 2012)...........................................................................................4

748710_1

**Page**

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
  (S.D.N.Y. Sept. 29, 2003)................................................................................11

*In re Luxottica Group S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006).........................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998).........................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
  No. MDL 1023, 2000 U.S. Dist. LEXIS 304
  (S.D.N.Y. Jan. 18, 2000)....................................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*,
  117 F.3d 721 (2d Cir. 1997)..................................................................9, 13, 16, 17

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
  (S.D.N.Y. Nov. 7, 2007)................................................................................8, 15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)................................................................................14

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)..................................................................................7

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................15

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
  No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164
  (D.N.J. June 30, 2005).......................................................................................11

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984).......................................................................12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).............................................................................................5

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................12

- iii -

Page

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)................................................................16

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004)...................................................................14

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................5, 9

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
   No. IP 00-1232-C B/S, 2001 U.S. Dist. LEXIS 13115
   (S.D. Ind. Aug. 28, 2001), *aff'd*,
   309 F.3d 978 (7th Cir. 2002) ..............................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................8, 9, 15

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982).................................................................7

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993)....................................................16

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992).........................................................9

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)...........................................................................7

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 23 ..................................................................................4, 5, 6
   Rule 23(a)....................................................................................16
   Rule 23(b)(3)..............................................................................5, 16
   Rule 23(c)(1)...............................................................................15
   Rule 23(c)(2)(B)............................................................................5
   Rule 23(e).........................................................................1, 4, 7, 16
   Rule 23(e)(1).................................................................................4

748710_1

**Page**

**SECONDARY AUTHORITY**

*Manual for Complex Litigation* (3d ed. 1995)
    §30.42........................................................................................................................8

748710_1

## I.      INTRODUCTION

Lead Plaintiff Anatoly Alexander ("Lead Plaintiff" or "Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds.  Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests an order granting final approval of: (i) the proposed Settlement[1] of this securities class action (the "Litigation") on behalf of a class (the "Class") consisting of all Persons and entities (other than the excluded Persons as set forth in the Settlement Agreement at ¶1.4) who purchased shares of the SSgA Yield Plus Fund (the "Fund") between July 1, 2005 and May 31, 2008, inclusive; and (ii) the Plan of Allocation of Settlement proceeds which will govern how the Net Settlement Fund will be allocated among Class Members.  Pursuant to the Settlement Agreement, the parties and their counsel have agreed to a settlement of this Litigation for the sum of $6,250,000 in cash, plus interest ("Settlement Fund").  The Settlement resolves all claims asserted by Lead Plaintiff and the Class in this Litigation against Defendants.[2]

As discussed below and in the Joint Declaration[3] filed concurrently herewith, the Court should grant final approval of the Settlement.  The Settlement is not just fair, reasonable, and

---

[1]      All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement, filed with the Court on March 27, 2012 (Doc. #104).  (Unless otherwise noted, "Doc. #__" references docket entries in 1:08-cv-08235-PAC (*Yu v. State Street Corporation, et al.*).)

[2]      Defendants State Street Corporation, SSgA Funds Management, Inc., SSgA Funds, Lynn L. Anderson, Peter G. Leahy, William L. Marshall, Steven J. Mastrovich, Patrick J. Riley, James Ross, Richard D. Shirk, Mark E. Swanson, Bruce D. Taber, and Henry W. Todd (collectively, "Defendants"), consent to the relief sought herein.

[3]      "Joint Declaration" or "Joint Decl." refers to the Joint Declaration of Jeffrey A. Berens and Evan J. Kaufman in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses.

- 1 -

adequate, but the $6.25 million recovery is an exceptional result for the Class as it potentially represents **60% to 100% of damages** that could be recoverable after trial. The Settlement is even more remarkable when evaluated in light of the procedural posture of this case. **To wit**, the case had been dismissed with prejudice on Defendants' motions to dismiss, and Plaintiff's appeal was pending at the time the Settlement Agreement was reached. Even had Plaintiff prevailed on his appeal, there would still remain many factual and legal difficulties that Plaintiff would have to overcome in order to prove at trial not only Defendants' liability but the amount of recoverable damages suffered by the Class. Because the Settlement is clearly fair, reasonable and adequate, and in the best interest of the Class, it should be approved.

Plaintiff also requests that the Court approve the Plan of Allocation of Settlement proceeds. This plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants. The plan was arrived at with the assistance of Co-Lead Counsel's damage consultant and follows the damage theory developed for this Litigation. The plan is fair, reasonable, and adequate and should be approved.

## II.   HISTORY OF THE LITIGATION

The following is a brief procedural history of the Litigation. The Court is respectfully referred to the Joint Declaration for a more detailed description of the Litigation, including a factual summary of Plaintiff's allegations. *See* Joint Decl., ¶¶11-49.

In June 2008, Ning Yu initiated this case by filing a class action complaint in the United States District Court for the District of Massachusetts on behalf of investors of the Fund (an open-end mutual fund) alleging violations of the Securities Act of 1933. In September 2008, the Panel on Multidistrict Litigation transferred the case to Judge Richard J. Holwell of the Southern District of New York where it was coordinated (but not consolidated) with MDL No. 1945, consisting of

pending ERISA actions against State Street Corporation (the "MDL Action").  On February 13, 2009, after the Court had appointed Anatoly Alexander as Lead Plaintiff and approved Dyer & Berens LLP and Coughlin Stoia Geller Rudman & Robbins LLP (n/k/a Robbins Geller Rudman & Dowd LLP) as Co-Lead Counsel, Lead Plaintiff filed his Amended Complaint for Violation of the Federal Securities Laws ("Amended Complaint") (Doc. #29).[4]

Thereafter, Defendants moved to dismiss the Amended Complaint on numerous grounds.  *See* Doc. ##32-37 (motions to dismiss), ##47-48 (opposition), ##51-52 (replies).  In a Memorandum Opinion and Order dated February 22, 2010, the Court held that Lead Plaintiff's Amended Complaint did not adequately plead the existence of materially false or misleading statements in the Fund's offering documents.  *See* Doc. #57.  The Court dismissed that complaint with prejudice.  *See id.*

On March 17, 2010, Lead Plaintiff moved for reconsideration of the portion of the Court's February 22, 2010 Order denying the right to replead, and attached a proposed Second Amended Complaint in support of his motion.  *See* Doc. ##59-62.

On July 14, 2010, the Court granted Lead Plaintiff's motion for reconsideration and for leave to amend.  *See* Doc. #74.

On July 28, 2010, Lead Plaintiff filed his Second Amended Class Action Complaint ("SAC").  *See* Doc. #77.  Defendants moved to dismiss the SAC, which motions were opposed by

---

[4]     The Court also granted, in part, Lead Plaintiff's motion to lift the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay.  *See* Joint Decl., ¶¶20-23.  Thus, while the two rounds of motion to dismiss briefing were underway, Co-Lead Counsel concurrently reviewed and analyzed much of the 15.5 million pages of documents produced by Defendants in the MDL Action, more than 15 SEC deposition transcripts, and prepared for and attended more than 20 MDL depositions.  *See id.*, ¶¶30-33, 68.

Lead Plaintiff.  *See* Doc. ##78-82 (motions to dismiss), ##86-87 (opposition), ##89-90 (replies). Following oral argument, on March 31, 2011, the Court issued a Memorandum Opinion and Order granting the motions and dismissing the case with prejudice.  *See* Doc. #94.

On April 29, 2011, Lead Plaintiff filed a Notice of Appeal to the Second Circuit Court of Appeals (Doc. #99) challenging the dismissal, and on August 4, 2011, filed his opening appeal brief.

Following the filing of Lead Plaintiff's opening appellate brief, the Settling Parties held discussions in an effort to resolve the Litigation, and on November 2, 2011, the Settling Parties reached an agreement-in-principle to settle the Litigation.  In response to the Settling Parties' request, on November 10, 2011, the Second Circuit granted a limited remand to this Court for purposes of considering and approving the proposed Settlement.  *See* Doc. #100.  On March 27, 2012, Lead Plaintiff filed with this Court an unopposed motion for preliminary approval of the Settlement, accompanying memorandum of law, and the parties' Settlement Agreement.  *See* Doc. ##104-106.

On May 2, 2012, following an appearance by counsel, this Court granted Lead Plaintiff's unopposed motion for preliminary approval of the Settlement.  *See* Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (Doc. #107).

## III.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Pursuant to Rule 23(e), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement."  *DeJulius v. New Eng. Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. Const. amend. V); *see also In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS

- 4 -

86513, at *20-*21 (S.D.N.Y. June 20, 2012) (concluding notice of settlement satisfied Rule 23, due process, and the PSLRA).  Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The law requires "'adequate notice,' not perfect notice."  *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, No. IP 00-1232-C B/S, 2001 U.S. Dist. LEXIS 13115, at *63 (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002).

Here, the Notice, in plain easily understood language, advises the Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections and requests for exclusion to the Settlement, who to contact for additional information, and provides specifics regarding the date, time, and place of the Settlement Hearing.  *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 68 (S.D.N.Y. 2003).  The Notice also contains information regarding Co-Lead Counsel's fee and expense application and the Plan of Allocation.  *See* Joint Decl., ¶¶72, 81.  Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

In the Preliminary Approval Order (Doc. #107), the Court approved Plaintiff's proposed plan for notifying Class Members about the proposed Settlement and Plan of Allocation of Settlement proceeds.  Preliminary Approval Order, ¶¶7-9, 12.  The Court held that the requirements of due process and Federal Rule of Civil Procedure 23 would be satisfied if the Plaintiff timely implemented the notice plan described in the Preliminary Approval Order.  *See id.*, ¶7.  Plaintiff has

- 5 -

now satisfied all of the elements of the notice plan approved by the Court.  The Claims Administrator mailed individual copies of the Notice to all potential Class Members who could be identified with reasonable effort.  *See* ¶¶2-6 to the Declaration of Jennifer S. Hilton Regarding Class Action Notice Mailing, Publishing, Internet Posting, and Claims Administration ("Hilton Decl."), submitted herewith.  The Claims Administrator also used diligent efforts to give notice to nominee purchasers (such as brokerage firms and banks) who purchased Fund shares during the Class Period as record owners but not beneficial owners, and the Claims Administrator also mailed out additional copies of the Notice to potential Class Members and their nominees in response to requests from those nominees.  *Id*., ¶¶3-5.  As of August 14, 2012, the Claims Administrator had mailed a total of 3,835 copies of the Notice to potential Class Members and their nominees.  *Id*., ¶6.  Further, a Summary Notice was published in the national edition of *Investor's Business Daily* (*id.*, ¶10) and was transmitted over the *Business Wire* (Joint Decl., ¶56).  All of these steps were undertaken within the timeframe set forth in the Preliminary Approval Order.  In addition, the Notice, Proof of Claim form, Summary Notice, Settlement Agreement, and Preliminary Approval Order were placed on a case-specific settlement website by the Claims Administrator.  *See* Hilton Decl., ¶9.

Plaintiff respectfully submits that the notice program implemented in this Litigation constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23.  *See, e.g.*, *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *5-*6 (S.D.N.Y. Aug. 6, 2010) (measures taken by the claims administrator in mailing the notices were adequate to inform the members of the class and sufficient to satisfy the requirements of Rule 23 and due process).

748710_1

IV.     **THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

A.      **The Settlement Before the Court**

In complete settlement of this Litigation, Defendants agreed to pay $6.25 million in cash. These Settlement funds were deposited in an escrow account on May 9, 2012 and have been earning (and will continue to earn) interest until distribution.  *See* Joint Decl., ¶50.  The Settlement proceeds will be distributed to Class Members pursuant to the Plan of Allocation, as set forth in the Notice, after payment of settlement administration costs, and reasonable attorneys' fees and expenses awarded by the Court.

B.      **The Standards for Judicial Approval of Class Action Settlements**

It is well-settled that compromises of disputed claims are favored by the courts.  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (recognizing the general policy favoring the settlement of litigation).  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation.  *See In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.").

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, adequate, and reasonable, and in the best interest of the class.  *See, e.g., Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (affirming approval of class action settlement where it was "fair, adequate, and reasonable, and not a product of collusion"); *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 160-63 (S.D.N.Y. 2011) (granting final approval where class action settlement was procedurally and substantively fair).

- 7 -

To complete this analysis, a court must look at both the procedural and substantive fairness of the settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Procedural fairness relates to the negotiation process. *See id.* Where the proposed settlement, as here, is "'reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery,'" then a "'presumption of fairness, adequacy, and reasonableness may attach.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Manual for Complex Litigation* §30.42 (3d ed. 1995)); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *17 (S.D.N.Y. Nov. 7, 2007) ("'A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws.'") (citation omitted); Joint Decl., ¶¶30-33, 46-49, 65, 68, 91-93 (detailing the parties' arm's-length settlement negotiations, the standing and caliber of the counsel involved, and the discovery completed); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

While this presumption may be afforded to the Settling Parties and thus satisfy the procedural fairness analysis, the Court must also examine the substantive fairness or terms of the Settlement by evaluating the *Grinnell* factors which are as follows: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

- 8 -

settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors."); *see also Thompson*, 216 F.R.D. at 61 ("All nine [*Grinnell*] factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances."). Moreover, courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved. *See, e.g.*, *EVCI Career Colleges*, 2007 U.S. Dist. LEXIS 57918, at *13 ("In applying these [*Grinnell*] factors, a court neither substitutes its judgment for that of the parties who negotiated the settlement nor conducts a mini-trial of the merits of the action."). When examined under the applicable criteria, this Settlement is an excellent result for the Class.

### C.    The Settlement Satisfies the *Grinnell* Criteria for Approval

#### 1.    The Reasonableness of the Settlement in Light of the Best Possible Recovery

"'There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Wal-Mart Stores*, 396 F.3d at 119 (citation omitted). This determination of what constitutes a reasonable settlement "'is not susceptible of a mathematical equation yielding a particularized sum.'" *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (citation omitted). In other words, the issue for the Court is not whether the Settlement represents the "best possible

recovery," but how the Settlement relates to the strengths and weaknesses of the case. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *57 (S.D.N.Y. Nov. 8, 2010).

Yet, in this particular case, the best possible recovery is perhaps the factor most indicative of the fairness and adequacy of the $6.25 million Settlement. According to Plaintiff's expert, based upon the internal data provided by Defendants, the maximum recoverable Section 11 damages – prior to the possible application of a negative loss causation defense – are estimated at approximately $10 million. *See* Joint Decl., ¶¶46, 58. The negative loss causation defense, if established, could decrease this damage total significantly, since the Class cannot claim damages for losses not associated with the allegedly false and misleading statements. *Id.*, ¶58. Defendants would attempt to decrease potential damages by showing part of the decrease in the Fund's net asset value resulted from, for example, diminution in value of disclosed mortgage-related securities, general market declines, and other factors not related to the Class's claims. *Id.* Thus, assuming that Lead Plaintiff was successful on appeal and assuming that Lead Plaintiff succeeded on the merits as to all potential misstatements, the Settlement represents 60% to 100% (or more) of damages recoverable at trial. This is an excellent result now and would be at any stage of the litigation. *See id.*, ¶¶59, 88, 92.[5]

---

[5] Here, the case was dismissed with prejudice, and was on appeal to the Second Circuit. While other District Courts have considered the loss causation issue (and accepted the arguments advanced by Lead Plaintiff), to Plaintiff's knowledge no Circuit Court has ever directly addressed the issue. *See* Joint Decl., ¶62. Under such circumstances, a proposed settlement of even a small percentage of potentially recoverable damages can easily be justified in order to avoid the substantial risks associated with the pending appeal and continuing this Litigation. *See Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (finding settlement representing 3.8% of plaintiffs' estimated damages to be within the range of reasonableness).

- 10 -

### 2.      The Risks of Continued Litigation

The above assumptions that Plaintiff will succeed on appeal and on the merits are not foregone conclusions, and the major litigation risks faced by Lead Plaintiff serve to highlight just how favorable the Settlement is for Class Members.  *See* Joint Decl., ¶¶60-66.

First and foremost, there is the considerable risk associated with the pending appeal of Judge Holwell's dismissal ruling regarding the lack of loss causation.  Although Co-Lead Counsel and Plaintiff believe that their opening brief is exceptionally strong, there is no way to predict the outcome of the appeal with any confidence.  And while other District Courts have considered this issue under similar circumstances (and accepted the arguments advanced by Plaintiff here), to Co-Lead Counsel's knowledge no Circuit Court has ever directly addressed the issue.  *See id.*, ¶62.  If Defendants were to prevail in the Second Circuit, there would be no recovery for the Class.

Secondly, even if Plaintiff succeeded on appeal and in establishing liability, he would still have to prove that Class Members suffered compensable damages.  "[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."  *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003).  In this case, Defendants' negative causation defense, which would limit recoverable damages to those directly caused by the misstatements (and would eliminate those losses caused by general market declines and the disclosed mortgage related-securities), could eliminate a considerable portion of the $10 million in potential damages.  *See* Joint Decl., ¶63.  *But see McKowan Lowe & Co. v. Jasmine, Ltd.*, No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164, at *36-*37 (D.N.J. June 30, 2005) (finding that where defendants adduced proof that the alleged misrepresentations did not cause plaintiffs' losses, defendants were entitled to summary judgment on plaintiffs' Section 11 claim).  Thus, due to a

- 11 -

number of unsettled and outstanding legal and factual issues, Plaintiff could prevail at trial but still

be awarded damages of less than $6.25 million.  *See* Joint Decl., ¶¶63-64.

Finally, among the significant additional risks: (i) Defendants could point to language in the

disclosure documents which they contend put Class Members on notice of the risks associated with

the Fund's investments in mortgage-backed securities; (ii) Defendants could argue that the housing

crisis was unprecedented and caught even the most sophisticated financial firms by surprise, thus no

known and foreseeable risk existed; and (iii) Defendants could assert that if any misrepresentations

or omissions occurred, they were not material.  *See* Joint Decl., ¶64.  In the face of these sizeable

risks, the Class obtained a substantial all-cash recovery, providing support for the fairness of the

Settlement.

### 3.      The Complexity, Expense, and Likely Duration of the Litigation

"The expense and possible duration of the litigation should be considered in evaluating the

reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  "'[I]t

is beyond cavil that continued litigation in this . . . securities class action would be complex, lengthy,

and expensive, with no guarantee of recovery by the class members.'"  *Strougo v. Bassini*, 258 F.

Supp. 2d 254, 258 (S.D.N.Y. 2003) (citation omitted).  Indeed, had the parties not reached an

agreement to settle (and assuming Plaintiff's appeal was successful), the parties would have faced

prolonged and expensive litigation, including voluminous document productions specifically related

to the Fund, dozens of depositions, extensive pretrial motions addressing complex factual and legal

questions, class certification, oral arguments, and ultimately a complicated, lengthy trial, followed by

another round of appeals; the outcome of which were all uncertain.  *See* Joint Decl., ¶67.  Continued

litigation would also have caused Class Members who suffered economic losses between 2005 and

2008 to wait years longer for a resolution of their claims.  *See Hicks*, 2005 U.S. Dist. LEXIS 24890,

- 12 -

at *16 (explaining "justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action").  Settlement, now, avoids that and provides an immediate cash benefit to Class Members.

### 4.      Stage of Proceedings and Extent of Discovery

"The stage of the proceedings and the amount of discovery completed at the time a Settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *PaineWebber*, 171 F.R.D. at 126.  "The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *36-*37 (S.D.N.Y. Apr. 6, 2006).

This case was in litigation for three and a half years before the Settlement was reached. During that time, Co-Lead Counsel undertook a careful and unusually extensive investigation of Plaintiff's claims, including: the review and analysis of an enormous quantity of publicly available information about Defendants, the Fund, and its underlying holdings of hundreds of securities at various times; the review and analysis of much of the 15.5 million pages of documents produced by Defendants in the MDL Action, more than 15 SEC deposition transcripts, and preparation for and attendance at more than 20 MDL depositions; research of the (often developing and/or unsettled) law pertinent to the claims and defenses asserted in the Litigation; the drafting and filing of an Amended and a Second Amended Complaint; two rounds of extensive motion to dismiss briefing;  oral argument in connection with Defendants' motions to dismiss; the subsequent appeal to the Second Circuit challenging dismissal of the case based on Defendants' motions to dismiss; ongoing communications and conferral with the Court-appointed Lead Plaintiff; participation in good-faith

- 13 -

settlement discussions with counsel for Defendants, including the compilation, production, and review of data needed to estimate potential Class damages; and the consultation with an experienced mutual fund damages expert. *See* Joint Decl., ¶¶7, 68-69, 89. All of this work and information that was gathered occurred prior to executing the Settlement Agreement. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *10 (S.D.N.Y. May 14, 2004) ("Lead Plaintiff had a wealth of information at its disposal gleaned from more than two years of investigation and litigation before entering into the Settlement Stipulation."). Based on the foregoing, Co-Lead Counsel adequately appreciated the merits of this Litigation before agreeing to the Settlement. *See In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("That Plaintiffs' Counsel could make an informed decision on the merits of recommending the Settlement militates in favor of approving it."). Thus, this factor weighs strongly in favor of the fairness and reasonableness of the Settlement.

### 5. Maintaining the Class Action Throughout Trial

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial" because "'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation omitted). At the time of Settlement, class certification had not yet been litigated. *See* Joint Decl., ¶70. Co-Lead Counsel, however, fully anticipated that Defendants would oppose class certification as vigorously as they had contested Plaintiff's allegations. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *41. Moreover, "[t]here is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings." *Bellifemine*, 2010 U.S. Dist. LEXIS 79679, at *11; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187

F.R.D. 465, 476 (S.D.N.Y. 1998) ("'[I]f insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1).'") (citation omitted).  "As such, even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *41.  Accordingly, the Settlement avoids any uncertainty with respect to these issues.

### 6.    The Reaction of the Class to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22 (where no objections and one request for exclusion were received, the court found this fact to show those affected by the settlement had "overwhelmingly endorsed it").  Plaintiff has received no objection to and no opt-outs from the proposed Settlement.  *See* Joint Decl., ¶¶57, 71; Hilton Decl., ¶19; *Wal-Mart Stores*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'") (citation omitted); *Deutsche Bank*, 236 F.3d at 86-87 (affirming approval of settlement where out of the 27,883 notices sent, 18 objections and 72 exclusions were received).  In addition, Lead Plaintiff has actively participated throughout the prosecution of his claims and approved the decision to enter into the Settlement with Defendants.  *See* Joint Decl., ¶71.  Thus, the positive reaction from the Class clearly weighs in favor of final settlement approval.[6]

---

[6]    In assessing a proposed settlement, the court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *See Grinnell*, 495 F.2d at 463.  Since the Settlement provides for 60% to 100% of recoverable damages, Plaintiff submits that this factor

- 15 -

Accordingly, pursuant to Rule 23(e), the Court should approve this class action Settlement as fair, reasonable, adequate, and in the best interest of the Class.[7]

## V.    THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD ALSO BE APPROVED

The Notice contains the Plan of Allocation detailing how the Settlement proceeds are to be divided among eligible Class Members who submit timely and valid Proof of Claim forms.  A trial court has broad discretion in approving a plan of allocation.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).  The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable and adequate.  *See PaineWebber*, 171 F.R.D. at 132.  "'In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.'"  *Giant Interactive*, 279 F.R.D. at 163 (citation omitted); *see also White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds).

Here, working with their damage consultant, Co-Lead Counsel developed a proposed plan of allocation of settlement proceeds that reflects their damage theory of the case in a simple and straightforward manner and will result in a fair distribution of the available proceeds among eligible

---

has little or no relevance.  In any event, the fact that a defendant could afford to pay more does not render a settlement unreasonable.  *See Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *57 ("'the mere ability to withstand a greater judgment does not suggest the settlement is unfair'") (citation omitted).

[7]    This Court conditionally certified the proposed Class in its Preliminary Approval Order.  *See* Preliminary Approval Order, ¶¶2-4.  For purposes of determining whether the Litigation satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Lead Plaintiff respectfully incorporates the arguments set forth in his Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement, for why this Litigation warrants final class certification.  *See* Doc. #106 at §IV.

- 16 -

Class Members.  Generally, the Plan of Allocation awards a *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss taking into account several factors, including the timing of the purchases and sales of the Fund shares.  *See* Joint Decl., ¶¶72-80; *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *7 (S.D.N.Y. May 13, 2011) (approving settlement agreement that called for pro rata distribution based upon each authorized claimant's "Recognized Claim").  This simple formula is fair and reasonable.  *See In re NASDAQ Market-Makers Antitrust Litig.*, No. MDL 1023, 2000 U.S. Dist. LEXIS 304, at *5 (S.D.N.Y. Jan. 18, 2000) (explaining "[a]n allocation formula need only have a reasonable, rational basis").

Courts also consider the reaction of a class to a plan of allocation.  *See PaineWebber*, 171 F.R.D. at 126 ("'the absence of objectants may itself be taken as evidencing the fairness of a settlement'") (citation omitted).  The Notice described the proposed Plan of Allocation of Settlement proceeds in detail and indicated that the deadline for objecting to the plan is August 23, 2012.  *See* Joint Decl., ¶¶53, 57.  To date, no objections to the plan have been received.  *See id.*, ¶¶57, 80. Accordingly, since the Plan of Allocation is fair, reasonable and adequate, and is recommended by experienced and competent counsel, it should be approved.

## VI.     CONCLUSION

Based on the foregoing, the Joint Declaration, and the entire record herein, Lead Plaintiff

respectfully requests that the Court finally approve the Settlement and the Plan of Allocation of

Settlement proceeds as fair, reasonable, and adequate, and in the best interests of the Class.

DATED:  August 16, 2012                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART


                s/ Ellen Gusikoff Stewart
              ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

- 18 -

DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone: 303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

Lead Counsel for Plaintiff

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
200 Ashford Center North - Suite 300
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mfistel@holzerlaw.com

Additional Counsel for Plaintiff

748710_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 16, 2012.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: elleng@rgrdlaw.com

# Mailing Information for a Case 1:08-cv-08235-PAC-JLC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Olivia S. Choe**
  olivia.s.choe@usdoj.gov

- **John D. Donovan , Jr**
  jdonovan@ropesgray.com,sampleplead@ropesgray.com,CourtAlert@ropesgray.com

- **Thomas James Dougherty**
  dougherty@skadden.com,rmarkow@skadden.com,tholden@skadden.com

- **Christopher G. Green**
  christopher.green@ropesgray.com,sampleplead@ropesgray.com,CourtAlert@ropesgray.com

- **Michael S. Hines**
  michael.hines@skadden.com,tholden@skadden.com,richard.markow@skadden.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com

- **Daniel J. Maher**
  djmaher@ropesgray.com,CourtAlert@ropesgray.com

- **Lila A. Palmer**
  lila.palmer@ropesgray.com,CourtAlert@ropesgray.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas G. Shapiro**
  tshapiro@shulaw.com,amcintire@shulaw.com,kball@shulaw.com

- **Robert A. Skinner**
  Robert.Skinner@ropesgray.com,sampleplead@ropesgray.com,CourtAlert@ropesgray.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Carolina Cecilia Torres**

ctorres@csgrr.com

- **Harvey J. Wolkoff**
  hwolkoff@ropesgray.com,CourtAlert@ropesgray.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Robert J. Dyer
Dyer & Berens, L.L.P.
682 Grant Street
Denver, CO 80203
```

```
Peter Simshauser
Skadden, Arps, Slate, Meagher & Flom
One Beacon Street
31st floor
Boston, MA 02108
```