UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | : : : : | MDL No. 1945 |
| NING YU, On Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No. 1:08-cv-08235-PAC (Relates to MDL No. 1945) |
| Plaintiff, | : : | CLASS ACTION |
| vs. | : : | |
| STATE STREET CORPORATION, et al., | : : | |
| Defendants. | : : : | |
| | x | |

CO-LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     HISTORY OF THE LITIGATION ............................................................................3

III.    ARGUMENT ..............................................................................................................6

        A.      Lead Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and
                Expenses from the Common Fund.................................................................6

        B.      The Court Should Award a Percentage-of-the-Fund As Reasonable
                Attorneys' Fees in this Case .........................................................................7

        C.      The Goldberger Factors Confirm that the Requested Fee Is Reasonable ...............9

                1.      The Risks of the Litigation/Time and Labor Expended by Counsel .........10

                        a.      The Contingent Nature of Co-Lead Counsel's
                                Representation...........................................................................10

                        b.      Co-Lead Counsel's Significant Monetary Risks............................12

                        c.      Additional Litigation Risks in This Action..................................14

                2.      The Magnitude and Complexity of the Litigation ....................................16

                3.      The Quality of Representation and Result Achieved................................18

                4.      Standing and Caliber of Opposition Counsel...........................................18

                5.      The Reaction of Class Members ...............................................................19

                6.      Public Policy Considerations ...................................................................19

        D.      The Requested Attorneys' Fees Are Also Reasonable under a Lodestar
                Cross-Check.................................................................................................20

        E.      Lead Plaintiff's Counsel's Expenses Were Reasonably Incurred and
                Necessary to the Prosecution of this Action ...............................................22

IV.     CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...............................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................5

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).................................................................................................19

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)............................................................................................7, 20

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 Civ 2207 (JGK), 2010 U.S. Dist. LEXIS 79679
  (S.D.N.Y. Aug. 5, 2010) .........................................................................................16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...................................................................................................6

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .........................................................................16

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036
  (S.D.N.Y. May 11, 2010).......................................................................................8, 9

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................................................10

*Duchene v. Michael Cetta, Inc.*,
  No. 06 Civ. 4576 (PAC) (GWG), 2009 U.S. Dist. LEXIS 85955
  (S.D.N.Y. Sept. 10, 2009)..........................................................................................9

*Frank v. Eastman Kodak*,
  228 F.R.D. 174 (W.D.N.Y. 2005)..............................................................................9

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................. *passim*

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  No. 11-12410, 2012 U.S. App. LEXIS 15134
  (11th Cir. July 23, 2012).........................................................................................15

Page

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................8, 10

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   MDL No. 1500, 2006 U.S. Dist. LEXIS 17588
   (S.D.N.Y. Apr. 6, 2006)...........................................................................................16

*In re Blech Sec. Litig.*,
   No. 94 Civ. 7696(RWS), 2002 U.S. Dist. LEXIS 23170
   (S.D.N.Y. Nov. 27, 2002).........................................................................................9

*In re Charter Commc'ns, Inc. Sec. Litig.*,
   MDL No. 1506, 2005 U.S. Dist. LEXIS 14772
   (E.D. Mo. June 30, 2005).........................................................................................19

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007
   (S.D.N.Y. May 13, 2011).........................................................................................9

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ....................................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
   (S.D.N.Y. Nov. 5, 2010) ..........................................................................................14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................8, 18, 23

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003).......................................................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
   (S.D.N.Y. Sept. 26, 2003).........................................................................................14

*In re Initial Public Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................9

748733_1

Page

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007)......................................................................................15

*In re Lupron Mktg. & Sales Practices Litig.*,
    MDL No. 1430, 2005 U.S. Dist. LEXIS 17456
    (D. Mass. Aug. 17, 2005)......................................................................................11

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888
    (E.D.N.Y. Aug. 7, 1998).......................................................................................20

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
    (S.D.N.Y. Jan. 31, 2007)......................................................................................22

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................................16

*In re Priceline.com, Inc. Sec. Litig.*,
    No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538
    (D. Conn. July 19, 2007)...................................................................................7, 10

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) .......................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)..................................................................................19

*In re State St. Bank & Trust Co. Fixed Income Funds Invs. Litig.*,
    774 F. Supp. 2d 584 (S.D.N.Y. 2011).....................................................................6

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106
    (S.D.N.Y. July 31, 2008) ......................................................................................15

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
    (S.D.N.Y. Nov. 7, 2007)................................................................................7, 8, 21

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................20

- iv -

**Page**

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)..........................................................................................................7

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067
   (E.D.N.Y. Jan. 20, 2010) ...............................................................................................9

*Kurzweil v. Philip Morris Cos., Inc.*,
   No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378
   (S.D.N.Y. Nov. 24, 1999) .............................................................................................14

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973).........................................................................................21

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
   540 F.2d 102 (3d Cir. 1976).........................................................................................21

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................7, 8, 9, 20

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) ....................................................................................16

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)...........................................................................................8

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913
   (S.D.N.Y. Mar. 2, 2010) .................................................................................................9

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)......................................................................................................22

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ 4270 (PAC), 2009 U.S. Dist. LEXIS 27899
   (S.D.N.Y. Mar. 31, 2009) ...............................................................................................8

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d Cir. 1983)........................................................................................22

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992)..............................................................................18, 20

**Page**

*Reyes v. Buddha-Bar NYC*,
No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277
(S.D.N.Y. May 28, 2009) ................................................................................9

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) .....................................................................15

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999) ........................................................................6, 8

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
(S.D.N.Y. June 7, 2005) ..................................................................................9

*Stalcup v. Schlage Lock Co.*,
505 F. Supp. 2d 704 (D. Colo. 2007) ............................................................22

*Stefaniak v. HSBC Bank USA, N.A.*,
No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872
(W.D.N.Y. June 28, 2008) ...............................................................................9

*Taft v. Ackermans*,
No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
(S.D.N.Y. Jan. 31, 2007) ...............................................................................20

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608
(S.D.N.Y. May 14, 2004) ...............................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ..............................................................................8

*Zerkle v. Cleveland-Cliffs Iron Co.*,
52 F.R.D. 151 (S.D.N.Y. 1971) .....................................................................16

748733_1

Page

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77k ............................................................................................................................3
§77l(a)(2) ....................................................................................................................3
§77o ............................................................................................................................3
§77z-1(a)(6) ................................................................................................................8
§77z-1(b)(1) ..............................................................................................................12

Federal Rules of Civil Procedure
Rule 8(a) .....................................................................................................................5
Rule 23(c)(1) .............................................................................................................16
Rule 23(h) ...................................................................................................................1
Rule 54(d)(2) ..............................................................................................................1

## SECONDARY AUTHORITIES

7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
§1803 ..........................................................................................................................6

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
108 F.R.D. 237 (Oct. 8, 1985) ....................................................................................8

748733_1

Co-Lead Counsel Dyer & Berens LLP ("Dyer Berens") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") respectfully submit this Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses in connection with the proposed settlement of this securities class action.[1]

## I.     PRELIMINARY STATEMENT

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Co-Lead Counsel respectfully request this Court enter an order: (1) awarding attorneys' fees in the amount of 33% of the settlement fund ($2,062,500); (2) awarding $146,513.94 in expenses in connection with the prosecution and resolution of the Litigation; and (3) awarding interest on these amounts at the same rate and for the same periods as earned by the Settlement Fund until paid.  The requested attorneys' fees are reasonable under pertinent factors assessed by courts in this Circuit, including the risks of the litigation, the time and labor expended by counsel, the contingent nature of the services performed, the magnitude and complexity of the litigation, the quality of representation and the result achieved, the professional standing and skill of all counsel, the support of the class, and public policy considerations such as rewarding attorneys who produce these benefits in order to maintain an incentive to others.

Co-Lead Counsel are mindful of the Court's comment at the preliminary approval hearing that it had recently approved attorneys' fees of 25% to 30% in a number of common fund cases. See May 2, 2012 Hearing Transcript at 13:7-8.  Doc. #108.  However, as described herein, Co-Lead

---

[1]     Defendants State Street Corporation, SSgA Funds Management, Inc., SSgA Funds, Lynn L. Anderson, Peter G. Leahy, William L. Marshall, Steven J. Mastrovich, Patrick J. Riley, James Ross, Richard D. Shirk, Mark E. Swanson, Bruce D. Taber, and Henry W. Todd (collectively, "Defendants") take no position with respect to this request for fees and expenses.

748733_1

Counsel believe that this is an exceptional case resulting in an outstanding result for the Class, in which a slightly higher award is justified.  Lead Plaintiff's counsel and their paraprofessionals performed 6,105.85 hours of work, representing a lodestar of $2,951,347.00, to prosecute this action. In connection with the start of what would prove to be an unrelenting and diligent effort to prosecute the claims on behalf of the Class, Co-Lead Counsel reviewed millions of pages of documents from the MDL ERISA actions, perhaps 99% of which had little or no relevance to this case.  After painstakingly culling through one irrelevant document after the next, counsel eventually discovered some specific information concerning the actual, undisclosed make-up of the SSgA Yield Plus Fund (the "Fund") and the materiality of the mortgage-backed, mortgage-related and subprime holdings hidden within the Fund, which documents fully supported Lead Plaintiff's claims.  It was this internal State Street Corporation ("State Street") information which led to the Court's reconsideration and reversal of its "with prejudice" dismissal and its opinion that Lead Plaintiff had adequately pleaded false and misleading statements.

Critically, that Lead Plaintiff had adequately pleaded false and misleading statements is the reason that Defendants settled – and settled at *60% to 100% of recoverable damages* – despite having achieved a second dismissal with prejudice at the trial court level.  *See* May 2, 2012 Hearing Transcript at 8:8-22 (Defendants' counsel's explanation as to why Defendants settled at this time). Doc. #108.  Thus, it was only through Co-Lead Counsel's significant efforts, at considerable economic risk to themselves, that they were able to achieve such an exceptional result for the benefit of the Class.

- 2 -

For all of the reasons set forth herein and detailed in the Joint Declaration,[2] Co-Lead Counsel request that this motion for an award of attorneys' fees and expenses be granted.

## II.      HISTORY OF THE LITIGATION

This is a securities class action on behalf of all persons and entities who purchased Fund shares between July 1, 2005 and May 31, 2008, pursuing remedies under §§11, 12(a)(2) and 15 of the Securities Act of 1933.

On June 30, 2008, Ning Yu filed the initial complaint in the United States District Court for the District of Massachusetts alleging that Defendants offered and sold shares of the Fund to the public through registration statements and prospectuses that were materially false and misleading.  In September 2008, the Panel on Multidistrict Litigation ("MDL") transferred the case to the Southern District of New York where it was assigned to Judge Holwell, in which ERISA actions involving different, unregistered State Street funds were already pending.  On October 22, 2008, Judge Holwell ordered that the case would be coordinated but not consolidated with MDL No. 1945 (the "MDL Action").  Six days later, on October 28, 2008, Lead Plaintiff submitted a pre-motion letter to the Court, seeking to lift the Private Securities Litigation Reform Act of 1995's ("PSLRA") automatic discovery stay.

On January 15, 2009, in a ruling from the bench, the Court appointed Anatoly Alexander as Lead Plaintiff and the law firms of Dyer Berens and Coughlin Stoia Geller Rudman & Robbins LLP (n/k/a Robbins Geller) as Co-Lead Counsel.  During the same hearing, over Defendants' objection,

---

[2]      *See* the accompanying Joint Declaration of Jeffrey A. Berens and Evan J. Kaufman in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Joint Decl.").

748733_1

the Court granted, in part, Lead Plaintiff's motion to lift the discovery stay.  Specifically, the Court allowed Lead Plaintiff access to more than *13 million* pages of documents produced in the MDL Action (which eventually grew to 15.5 million pages), and allowed Co-Lead Counsel to attend the ongoing depositions.  The Court denied the request to the extent it sought production of additional documents specifically related to this Litigation and the Fund.  Despite the fact that the overwhelming majority of the MDL Action documents and testimony did not relate to the Fund or Lead Plaintiff's case, Co-Lead Counsel spent thousands of hours reviewing Defendants' documents, preparing for and attending more than 20 depositions, and diligently pursued the allowed discovery.

Shortly after the PSLRA's discovery stay was partially lifted, on February 13, 2009, Lead Plaintiff filed his amended complaint.  Defendants moved to dismiss it on March 11, 2009, and Lead Plaintiff's opposition and Defendants' reply briefs were filed on April 6, 2009 and April 20, 2009, respectively.  On November 6, 2009, Lead Plaintiff submitted a second pre-motion letter, this time seeking to fully lift the PSLRA's discovery stay so as to access documents and testimony specifically related to the Fund.

During the one-year pendency of Defendants' motions to dismiss, Co-Lead Counsel continued to review the millions of pages of internal State Street documents and otherwise participate in discovery.  Again, since the documents had been produced in different cases, with different claims, concerning different funds, perhaps 99% of those documents reviewed were irrelevant.  Akin to finding the proverbial needle in the haystack, however, Co-Lead Counsel occasionally discovered helpful documents which they pieced together with other scattered documents and ultimately located a small number of "hot" documents which strongly supported Lead Plaintiff's claims.

Nevertheless, in an Opinion and Order entered February 22, 2010, the Court dismissed the amended complaint for failure to adequately plead materially false or misleading statements in the Fund's offering documents and entered judgment because Lead Plaintiff had not expressly requested leave to amend.[3]  On March 17, 2010, Lead Plaintiff timely moved for reconsideration of the Court's "with prejudice" dismissal of the amended complaint and for leave to file a second amended complaint.  In doing so, Lead Plaintiff submitted a draft complaint which included reference to the internal State Street documents uncovered during discovery that showed Defendants had significantly understated the amount of mortgage-related securities held by the Fund.  After the parties fully briefed Lead Plaintiff's motion for reconsideration and leave to amend, on July 14, 2010 the Court granted the motion and permitted Lead Plaintiff to file the Second Amended Class Action Complaint ("SAC").  The Court concluded that Lead Plaintiff had adequately pleaded that the Fund's offering documents contained false and misleading statements concerning its holdings of mortgage-related securities and subprime mortgage-related securities.  Nevertheless, the Court invited Defendants to renew their motions to dismiss with respect to other pleading issues that had not yet been decided, including loss causation.

Following a second round of motions to dismiss and oral argument relating to the SAC, the Court, in an opinion issued on March 31, 2011, granted Defendants' motions and again dismissed the case with prejudice.  In doing so, the Court identified what it considered to be a "loophole" in the federal securities laws and ruled that there can almost never be loss causation in a §§11 or 12 misrepresentation or omission case involving an open-ended mutual fund.  It concluded that "closing

---

[3]     The Court applied the Rule 8(a) pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which was decided by the U.S. Supreme Court after briefing on the motions to dismiss was completed.

748733_1

the loophole requires legislative action." *See In re State St. Bank & Trust Co. Fixed Income Funds Invs. Litig.*, 774 F. Supp. 2d 584, 595-96 (S.D.N.Y. 2011).

On April 29, 2011, Lead Plaintiff filed his notice of appeal and, on August 4, 2011, Lead Plaintiff filed his opening brief with the U.S. Court of Appeals for the Second Circuit.

Meanwhile, the parties were engaging in informal settlement discussions, including the compilation, production and review of damage-related data, which the parties used to consult with their respective damage experts.  According to Lead Plaintiff's expert, based upon the internal data provided by Defendants, the maximum recoverable §11 damages – *prior* to the application of a negative loss causation defense—are estimated at approximately $10 million.  On November 2, 2011, the parties reached an agreement-in-principle to settle this litigation for a cash payment on behalf of Defendants of $6.25 million.  *See* Joint Decl., ¶¶18-49.[4]

## III.    ARGUMENT

### A.    Lead Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan

---

[4]    On November 10, 2011, the Second Circuit granted a limited remand to this Court for the purpose of considering and approving the proposed class settlement.

Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *7-*8 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g., In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538, at *16-*17 (D. Conn. July 19, 2007); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).[5]

### B. The Court Should Award a Percentage-of-the-Fund As Reasonable Attorneys' Fees in this Case

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Veeco Instruments*, 2007 U.S. Dist. LEXIS 85554, at *10. In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method

---

[5]     The Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

748733_1

proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49; *Savoie*, 166 F.3d at 460 (stating that "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of the lodestar method and unequivocally recommending that courts use the percentage method in common fund cases).[6] As previously recognized by this Court, the trend in this Circuit is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g., Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036, at *27 (S.D.N.Y. May 11, 2010) (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005), and *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009)).

On a percentage basis, the 33% award requested here is consistent with other percentage fee awards within the Second Circuit. *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at *16-*17 (Crotty, J.) (collecting cases awarding approximately 33%); *id.* at *17 (Awarding 33% of settlement fund and explaining "[t]he attorneys' fees requested were entirely contingent upon success. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of

---

[6]      The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" for the class. 15 U.S.C. §77z-1(a)(6) (emphasis added). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco Instruments*, 2007 U.S. Dist. LEXIS 85554, at *11; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465 (S.D.N.Y. 2004).

- 8 -

compensation.");[7] *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576 (PAC) (GWG), 2009 U.S. Dist. LEXIS 85955, at *9 (S.D.N.Y. Sept. 10, 2009) (Crotty, J.) (awarding one-third of $3.15 million settlement fund, less plaintiff service payments).

### C.   The Goldberger Factors Confirm that the Requested Fee Is Reasonable

Whether the Court employs the percentage-of-the-fund method or the lodestar approach, it should consider the following criteria to evaluate the reasonableness of the request:

- the risks of the litigation;

- the time and labor expended by counsel;

- the magnitude and complexity of the litigation;

- the quality of representation;

- the requested fee in relation to the settlement; and

- public policy considerations.

---

[7]      *See also Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *10 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund, finding it "typical in class action settlements in the Second Circuit"); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *16 (S.D.N.Y. May 13, 2011) (awarding 33-1/3% of settlement); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33-1/3% of $586 million settlement); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% of settlement fund); *In re Blech Sec. Litig.*, No. 94 Civ. 7696(RWS), 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Nov. 27, 2002) (awarding 33-1/3% of settlement fund, plus expenses); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund); *Frank v. Eastman Kodak*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 40% of settlement fund, and noting that due to the relatively small settlement fund, the requested fee award was necessary to compensate counsel adequately); *Clark*, 2010 U.S. Dist. LEXIS 47036, at *27 (awarding fees of one-third of $6 million settlement); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *20 (S.D.N.Y. Mar. 2, 2010) (awarding fees of one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *22-*25 (E.D.N.Y. Jan. 20, 2010) (awarding fees of one-third of $9,250,000 settlement fund); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *11 (S.D.N.Y. May 28, 2009) (awarding fees of one-third of $710,000 settlement fund).

*Goldberger*, 209 F.3d at 50 (citation omitted); *see also Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *14.  An analysis of these factors confirms that the requested fee of 33% of the common fund is reasonable under the facts and circumstances of this case.

1.      **The Risks of the Litigation/Time and Labor Expended by Counsel**

Co-Lead Counsel submit that the significant risks of this Litigation when considered along with the time and labor expended and the result achieved as a direct result of counsel's enormous effort, support an award of 33% of the common fund.  *See generally* Joint Decl., ¶¶58-70, 83-88.

a.      **The Contingent Nature of Co-Lead Counsel's Representation**

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004).[8]  Many cases recognize that the risk assumed by an attorney

---

[8]     *Am. Bank Note Holographics*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").  This risk encompasses not just the risk of no payment, but also the risk of underpayment.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

is perhaps the foremost factor in determining an appropriate fee award.  *See Goldberger*, 209 F.3d at 54.

The litigation here was undertaken by Co-Lead Counsel entirely on a contingent-fee basis. The risks assumed by Co-Lead Counsel in bringing these claims to a successful conclusion are described in Section III.C.1.b-c, below, and the Joint Declaration.  *See* Joint Decl., ¶¶62-64, 83-88. From the outset, Co-Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Co-Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of this Litigation, including payment of the considerable costs that a case such as this requires.  Indeed, with an average lag time of more than three or four years for these types of cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

Further, despite the most vigorous and competent of efforts, success in contingent-fee litigation such as this is never assured.  Tens of thousands of hours have been expended in losing efforts.  Co-Lead Counsel know from experience that the commencement of a class action does not guarantee a settlement.  To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.  There have been many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, that excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  *See In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005) ("History is replete with cases in

which plaintiffs prevailed at trial on issues of liability, but recovered little or nothing by way of damages.") (collecting cases).

> **b.     Co-Lead Counsel's Significant Monetary Risks**

Here, the risks faced by Co-Lead Counsel were even greater than in the typical contingent-fee securities class action.  In the vast majority of securities class actions brought under the PSLRA, all discovery and other proceedings are stayed pending a ruling on a motion to dismiss.  *See* 15 U.S.C. §77z-1(b)(1).  While this provision was meant to protect defendants from burdensome discovery in cases which may ultimately be dismissed, it has the related benefit of eliminating some of the risk for plaintiffs' counsel who will typically only engage in expensive discovery *after* a court has already upheld the pleading of the underlying claims.  In this case, however, despite the fact that Lead Plaintiff's complaint had not been upheld, Co-Lead Counsel made the decision to seek access to and review the 13 million pages of documents already produced in the MDL Action.  And this was despite the fact that Defendants' counsel represented that very few documents would relate to the Fund or Lead Plaintiff's case, an assertion that proved to be correct.  *See* Joint Decl., ¶84.

As a result, Co-Lead Counsel quickly incurred very significant attorney time and expenses reviewing many millions of pages of documents and participating in more than 20 depositions, before even knowing whether Lead Plaintiff's complaint passed muster.  The aggressive and risky prosecution of this action required Lead Plaintiff's counsel and their paraprofessionals to perform 6,105.85 hours of work, representing a lodestar of $2,951,347.00, and to incur $146,513.94 in expenses.[9]  *See* Joint Decl., ¶¶30-32, 85.

---

[9]     The amount of time spent on the case by each attorney and paraprofessional, with lodestar calculations based on their current billing rates, is included in the declarations from Lead Plaintiff's counsel which accompany the motion for an award of attorneys' fees and expenses.  The time and

Co-Lead Counsel's bet paid off handsomely for the benefit of the Class. After painstakingly culling through one irrelevant document after the next, counsel eventually discovered some specific information concerning the actual, undisclosed make-up of the Fund and the materiality of the mortgage-backed, mortgage-related and subprime holdings hidden within the Fund that fully supported Lead Plaintiff's claims. *See* Joint Decl., ¶86.

It was this internal State Street information, which was uncovered through Co-Lead Counsel's participation in discovery, which led to the Court's reversal of its "with prejudice" dismissal and its opinion that Lead Plaintiff had adequately pleaded false and misleading statements. That Lead Plaintiff had pleaded actionable statements is the only reason that Defendants settled – and settled at this level – despite having achieved a second dismissal with prejudice on other grounds. *See* May 2, 2012 Hearing Transcript at 8:8-22 (Doc. #108); *see also* Joint Decl., ¶87.

Co-Lead Counsel could have mitigated the significant economic risk to themselves by waiting to engage in discovery until after a complaint was upheld, as contemplated by the PSLRA, or by cutting short the document review process after determining that nearly all of the documents produced related to unregistered State Street funds (and not the Fund) and thus were irrelevant to Lead Plaintiff's case. Instead, they aggressively pushed the case forward. Had counsel not reviewed millions of pages of documents, attended more than 20 depositions, and incurred expenses of $146,513.94 (all while a motion to dismiss was pending), Co-Lead Counsel believe that there would not have been any settlement for the Class, much less one representing 60% to 100% of potential

---

billing information contained in the declarations was prepared from contemporaneous daily time records regularly prepared and maintained by Lead Plaintiff's counsel. The hourly rates for attorneys included in the declarations are commensurate with the hourly rates charged by lawyers performing similar services in New York and elsewhere.

- 13 -

damages.  While the foregoing effort could justify a **_multiplier_** of lodestar, Co-Lead Counsel here are

seeking a fee that is **_less_** than their actual lodestar.  *See Kurzweil v. Philip Morris Cos., Inc.*, No. 94

Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378, at *8 (S.D.N.Y. Nov. 24, 1999) (recognizing that

multipliers of between 3 and 4.5 are common); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No.

02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *76 (S.D.N.Y. Nov. 5, 2010)

(multipliers over 4 are routinely granted); Joint Decl., ¶88.

c.  **Additional Litigation Risks in This Action**

While Co-Lead Counsel are confident that they would have reversed the dismissal order on

appeal, they recognize the risks inherent in any appeal as well as this type of class action litigation.

From the start, Co-Lead Counsel faced difficult issues relating to loss causation (*i.e.*, the primary

issue on appeal) and Defendants' negative causation defense, which limits recoverable damages to

those directly caused by the misstatements.  *See* Joint Decl., ¶¶62-63, 90.  Furthermore, the damage

assessments of the parties' trial experts would be sure to vary substantially, and any trial would

undoubtedly become a "battle of experts."  *See id.* at ¶64.  The outcome of such battles is never

predictable, and there existed the very real possibility that a jury could be swayed by experts for the

Defendants to minimize the Class' losses or to show that the losses were attributable to factors other

than the alleged misstatements and omissions.  *See In re Indep. Energy Holdings PLC Sec. Litig.*,

No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 26, 2003)

("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony

which may, or may not be, accepted by a jury.").  Consequently, even if Co-Lead Counsel prevailed

on appeal and as to liability at trial, the judgment obtained could well have been for but a fraction of the damages claimed or no recovery at all.[10]

Proving liability was also far from certain. *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *14 (S.D.N.Y. July 31, 2008) ("Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."). To succeed on Lead Plaintiff's claims under the Securities Act of 1933, Co-Lead Counsel would have needed to establish, *inter alia*, that the offering documents contained material omissions or misstatements that purchasers did not know about. Defendants disputed the existence of materiality and falsity and Lead Plaintiff faced significant risks with respect to the merits, including: (i) Defendants could point to language in the disclosure documents which they contend put Class Members on notice of the risks associated with the Fund's significant investments in mortgage-backed securities; (ii) Defendants could argue that the housing crisis was unprecedented and caught even the most sophisticated financial firms by surprise, thus no known and foreseeable risk existed; and (iii) Defendants could assert that if any misrepresentations or omissions occurred, they were not material. *See* Joint Decl., ¶64. Moreover, Co-Lead Counsel faced the risk that this case would not be certified as a class action, and if it were, they would not maintain class

---

[10]    The risk of no recovery in complex cases of this type is real. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, No. 11-12410, 2012 U.S. App. LEXIS 15134 (11th Cir. July 23, 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 15 -

certification through trial. *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *11 (S.D.N.Y. Aug. 5, 2010); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("[I]f 'insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1).'") (citation omitted); Joint Decl., ¶70.

## 2.   The Magnitude and Complexity of the Litigation

The magnitude and complexity of the litigation are additional factors examined by courts in evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that shareholder actions are notoriously complex and difficult to prove. *See Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This Litigation is no different.

Both the factual and legal issues presented by this Litigation were complex and disputed. As detailed above, this Litigation spanned more than four years and was settled only after Co-Lead Counsel had: (i) conducted an extensive investigation into the Class' claims; (ii) thoroughly researched the facts and law applicable to the Class' claims and Defendants' defenses; (iii) reviewed and analyzed many thousands of pages of public documents related to the Fund; (iv) reviewed

millions of pages of documents produced in the MDL Action; (v) attended more than 20 depositions (and reviewed and summarized the transcripts of many more SEC depositions); (vi) prepared and filed an initial complaint, a fact-specific amended complaint, and a very detailed second amended complaint specifying Defendants' alleged violations of the federal securities laws; (vii) opposed Defendants' first and second rounds of motions to dismiss; (viii) briefed a motion for reconsideration of a dismissal with prejudice; (ix) argued a motion to partially lift the PSLRA's stay and a motion to dismiss; (x) filed an opening brief on appeal; (xi) consulted with a damages expert; (xii) fully evaluated and considered the risks of continued litigation; (xiii) engaged in arm's-length settlement negotiations with Defendants' counsel; and (xiv) negotiated the Settlement Agreement. *See* Joint Decl., ¶¶5-7, 68, 89-90.

In addition, the expense and length of the litigation would have been further exacerbated because Defendants would have undoubtedly filed motions for summary judgment following expert discovery. Lead Plaintiff would have filed his motion for class certification. Briefing and discovery to resolve those motions would have entailed further substantial expenditure of time and effort. Assuming Lead Plaintiff survived summary judgment, trial preparation would have required many additional hours of work, at great expense. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditure of judicial resources. *See* Joint Decl., ¶67. The "normal" costs of litigation, including copying, travel, depositions, computer support services, and other necessary expenses, are quite high as already evidenced by the extensive work done by Co-Lead Counsel in connection with the MDL Action discovery. Accordingly, the magnitude and complexity of this securities class action supports the conclusion that the requested fee is reasonable and fair.

- 17 -

### 3.      The Quality of Representation and Result Achieved

The quality of the representation by Lead Plaintiff's counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee.  *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).   It took a great deal of skill to achieve this outstanding settlement, especially after the case had been dismissed with prejudice.  Lead Plaintiff's counsel are nationally known leaders in the fields of securities class actions and complex litigation. *See* Joint Decl., ¶91.  They are willing and able to take complex and difficult cases such as this to trial.  This willingness and ability added valuable leverage in the settlement negotiations.  *See id.* Moreover, this settlement represents a highly favorable result for the Class.   Co-Lead Counsel submit that their recovery of 60% to 100% of potential damages, after the case was dismissed and is on appeal, is almost unheard of in this area of the law.  *See id.* at ¶¶59, 92.  The outstanding result achieved is one that is attributable to the diligence, determination, hard work, and reputation of Lead Plaintiff's counsel, who developed, litigated, and successfully negotiated the settlement of this Litigation, consisting of an immediate and significant cash recovery, without the risk of further litigation.  In light of these facts, Co-Lead Counsel's request for 33% of the Settlement Fund is fair and reasonable.

### 4.      Standing and Caliber of Opposition Counsel

The quality of the work performed by Co-Lead Counsel in attaining the settlement should also be evaluated in light of the quality of the opposition.  *See Global Crossing*, 225 F.R.D. at 467 ("Securities Lead Counsel obtained the Settlement in the face of vigorous opposition by defendants who were represented by some of the nation's leading law firms.").  This litigation was vigorously contested, and Defendants were represented by very experienced and qualified attorneys from Ropes & Gray LLP and Skadden, Arps, Slate, Meagher & Flom LLP, which possess substantial experience,

- 18 -

expertise, and resources in the defense of complex securities litigation. *See* Joint Decl., ¶93. In the face of this knowledgeable, formidable, and well-financed opposition, Co-Lead Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle this litigation on terms that were extremely favorable to the Class. *See id.*; *see also In re Charter Commc'ns, Inc. Sec. Litig.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *54 (E.D. Mo. June 30, 2005) ("[I]t is reasonable for Lead Counsel and the other plaintiffs' firms [to] be as well paid as their adversaries who did not work on a contingency basis."). Accordingly, this factor also weighs in favor of the requested fee.

### 5.    The Reaction of Class Members

To date, the Claims Administrator has sent over 3,800 copies of the Notice to potential Class Members informing them, inter alia, that Co-Lead Counsel intended to apply to the Court for an award of attorneys' fees of 33% of the Settlement Fund, plus expenses not to exceed $300,000. *See* Joint Decl., ¶94. The time to object to the fee request expires on August 23, 2012, but to date, not a single objection to the fee and expense request has been received. *See id.* "[S]uch a low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted). The fact that no objections have been received is further evidence of the fairness of the fee request.[11]

### 6.    Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions such as

---

[11]    Should any timely objections to the fee and expense application be filed, Co-Lead Counsel will address them in a reply brief.

this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted). Plaintiffs' counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves. Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases. Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'" *Ressler*, 149 F.R.D. at 657. Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.*[12]

### D.    The Requested Attorneys' Fees Are Also Reasonable under a Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, courts may "cross check" the proposed award against counsel's lodestar. *Goldberger*, 209 F.3d at

---

[12]    *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *33 (S.D.N.Y. Jan. 31, 2007) ("'the class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action'") (citation omitted).

- 20 -

50.  Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work.  *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (en banc). Performing the lodestar cross-check here confirms that the fee requested by Co-Lead Counsel is reasonable and should be approved.

Lead Plaintiff's counsel and their paraprofessionals have spent, in the aggregate, 6,105.85 hours, over the course of four years diligently prosecuting this case.  *See* Joint Decl., ¶¶7, 85; *see also* Joint Declaration of Evan J. Kaufman and Ellen Gusikoff Stewart Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Declaration of Jeffrey A. Berens Filed on Behalf of Dyer & Berens LLP in Support of Application for Award of Attorneys' Fee and Expenses, Declaration of Thomas G. Shapiro Filed on Behalf of Shapiro Haber & Urmy LLP in Support of Application for Award of Attorneys' Fee and Expenses, and Declaration of Corey D. Holzer Filed on Behalf of Holzer Holzer & Fistel LLC in Support of Application for Award of Attorneys' Fee and Expenses, submitted herewith.  The resulting lodestar is $2,951,347.00.  A 33% fee, or $2,062,500, is $888,847.00 less than the actual lodestar incurred, and represents a negative multiplier of 0.70.  *See* Joint Decl., ¶¶85, 88; *see also Veeco Instruments*, 2007 U.S. Dist. LEXIS 85554, at *31-*32 ("Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar.  Thus, the lodestar 'cross-check' unquestionably supports a

percentage fee award of 30%."); *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) ("As lead counsel notes, the attorney fee award they are seeking is only a portion of the fair value of their work, as measured by billable hours. In other words, lead counsel are willing to accept compensation that is less than the customary fee for such work, as measured by the billable hour. Lead counsel note also that they will not be compensated for the risk involved in taking a case such as this case. In short, the proposed attorney fee award is less than the customary fee for such work, measured by the billable hour.").

Further, in determining whether the rates are reasonable, a court should take into account the attorneys' legal reputation, experience, and status. As the declarations of Lead Plaintiff's counsel demonstrate, they are among the most prominent, experienced, and well-regarded securities practitioners in the nation. Therefore, their hourly rates are reasonable here.[13] *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *73 (S.D.N.Y. Jan. 31, 2007) (approving counsel's hourly rates).

For these reasons, a lodestar cross-check confirms the reasonableness of the requested 33% fee under the facts and circumstances of this case.

### E.   Lead Plaintiff's Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action

Co-Lead Counsel also request $146,513.94 in expenses incurred while prosecuting this action. Lead Plaintiff's counsel have submitted declarations attesting to the accuracy of these

---

[13]   The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two or three years of application).

- 22 -

expenses, which are properly recovered by counsel. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class). Most of Lead Plaintiff's counsel's expenses were incurred for professional services rendered by Lead Plaintiff's experts and consultants, and expenses relating to attending depositions (both in person and via remote video link) and obtaining deposition transcripts (including SEC deposition transcripts). The remaining expenses are attributable to such things as the costs of maintaining the electronic document repository containing more than 15 million pages of documents, computerized research, copying documents, and other incidental expenses incurred in the course of this Litigation. These expenses were critical to Lead Plaintiff's success in achieving the Settlement. *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys [and] [f]or this reason, they are properly chargeable to the Settlement fund."). Additionally, no objections to the expense request have been received. *See* Joint Decl., ¶94. Accordingly, Co-Lead Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## IV. CONCLUSION

Co-Lead Counsel obtained an outstanding result for the Class, despite very significant risk. Therefore, for the reasons set forth herein, Co-Lead Counsel respectfully request that the Court approve and enter an order: (1) awarding attorneys' fees in the amount of 33% of the Settlement Fund ($2,062,500); (2) awarding Lead Plaintiff's counsel $146,513.94 in expenses; and (3) awarding

- 23 -

748733_1

interest on these amounts at the same rate and for the same periods as earned by the Settlement Fund until paid.

DATED:  August 16, 2012                         Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART


                    s/ Ellen Gusikoff Stewart
            ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone: 303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

Lead Counsel for Plaintiff

748733_1

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
200 Ashford Center North - Suite 300
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mfistel@holzerlaw.com

Additional Counsel for Plaintiff

- 25 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 16, 2012.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: elleng@rgrdlaw.com

748733_1

# Mailing Information for a Case 1:08-cv-08235-PAC-JLC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Olivia S. Choe**
  olivia.s.choe@usdoj.gov

- **John D. Donovan , Jr**
  jdonovan@ropesgray.com,sampleplead@ropesgray.com,CourtAlert@ropesgray.com

- **Thomas James Dougherty**
  dougherty@skadden.com,rmarkow@skadden.com,tholden@skadden.com

- **Christopher G. Green**
  christopher.green@ropesgray.com,sampleplead@ropesgray.com,CourtAlert@ropesgray.com

- **Michael S. Hines**
  michael.hines@skadden.com,tholden@skadden.com,richard.markow@skadden.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com

- **Daniel J. Maher**
  djmaher@ropesgray.com,CourtAlert@ropesgray.com

- **Lila A. Palmer**
  lila.palmer@ropesgray.com,CourtAlert@ropesgray.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas G. Shapiro**
  tshapiro@shulaw.com,amcintire@shulaw.com,kball@shulaw.com

- **Robert A. Skinner**
  Robert.Skinner@ropesgray.com,sampleplead@ropesgray.com,CourtAlert@ropesgray.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Carolina Cecilia Torres**

ctorres@csgrr.com

- **Harvey J. Wolkoff**
  hwolkoff@ropesgray.com,CourtAlert@ropesgray.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Robert J. Dyer
Dyer & Berens, L.L.P.
682 Grant Street
Denver, CO 80203

Peter Simshauser
Skadden, Arps, Slate, Meagher & Flom
One Beacon Street
31st floor
Boston, MA 02108
```